IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARK PULIDO, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. _____ ) |
| GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY, | ) ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Mark Pulido ("Plaintiff"), individually, and on behalf of all others similarly situated, hereby files this Class Action Complaint against Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company ("GEICO" or "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

1. This case is about GEICO's practice of unfairly profiting from the global COVID-19 pandemic. As of the date of this filing, the United States has confirmed well over 30 million coronavirus cases, and nearly 600,000 deaths. The state of Tennessee alone has over 849,000 confirmed cases and more than 12,000 deaths.

2. Beginning in March 2020, states across the country, including Tennessee, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

1

3. While many companies, industries, and individuals have suffered because of the COVID-19 pandemic, auto insurers like GEICO have scored a windfall.

4. Not surprisingly, due to state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents.

5. As a result of this decrease in driving and accidents, the premiums charged by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive.

6. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid- March 2020 and the end of April 2020.

7. Despite full knowledge of these facts, GEICO has continued to charge and collect excessive premiums, and has failed to issue adequate refunds. The company's "GEICO Giveback" program is woefully inadequate to compensate for the excessive premiums that customers have paid as a result of COVID-19. The program applies a 15% discount or credit on new and renewal auto insurance policies only.

8. It does not apply to the premiums that the customer has already paid or will continue to pay on policies already in place at the start of the COVID-19 pandemic.

9. Even with respect to new and renewal policies, the 15% credit falls well short of what has been conservatively estimated as an adequate return of premiums.

10. To remedy Defendants' unlawful conduct, Plaintiff brings this class action alleging violations of Tennessee state law. Plaintiff seeks compensatory damages and disgorgement of the ill-gotten gains obtained by GEICO to the detriment of its customers.

**JURISDICTION AND VENUE**

11.  This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a state different from Defendants.

12.  Venue is proper in the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1391 because Defendants reside in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

13.  Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company are Maryland corporations with their principal places of business in Chevy Chase, Maryland. Defendants sell personal automobile insurance in states around the country, including Tennessee. GEICO issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time period. GEICO may be served with process by serving its registered agent, C T Corporation System at 300 Montvue Road Knoxville, TN 37919.

14.  Plaintiff is an adult resident of Memphis, Tennessee . Plaintiff has held one personal auto insurance policy purchased from GEICO during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the premium paid by Plaintiff for this policy was unconscionably excessive. Despite this, GEICO failed to issue full credits or refunds.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

A.  **The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

15.  In late December 2019, a cluster of cases of pneumonia was reported in Wuhan, China. A novel coronavirus was identified, which became known as SARS-CoV-2. The virus

3

causes a disease called COVID-19. By mid-January 2020, cases of COVID-19 were confirmed in the United States, and the virus quickly spread.

16. By mid-March 2020, there were thousands of confirmed cases of COVID-19 across the United States and almost 200 in the state of Tennessee.

17. Like many states around the country, Tennessee responded to the worsening COVID-19 crisis with a series of measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

18. On March 12, 2020, Governor Bill Lee issued a disaster proclamation, declaring a state of emergency in all counties in Tennessee. Thereafter, the State rolled out a variety of social distancing measures that included, for example, the closing of schools, bars, restaurants, and casinos, and cancellation of all indoor gatherings of 10 or more people.

19. On April 2, 2020, Governor Lee instituted a statewide safer-at-home order, named Order 23. With some exceptions, the order mandated that all individuals living within the state were to stay at home, leaving only for essential activities or other specified reasons. The order mandated that "Because staying at home as much as possible for a temporary period of time will protect the health and safety of Tennesseans by limiting the spread of COVID-19 and preserving heath care recourse, all persons in Tennessee are required to stay at home."[1]

20. The safer-at-home order was scheduled to remain in place until April 14, 2020. However, due to the increasing severity of the COVID-19 crisis, Governor Lee extended the order until April 30, 2020.

21. On May 7, 2020, Governor Lee extended the order until June 30, 2020, and lifted some, but not all, restrictions.

---

[1] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee23.pdf (last visited on June 10,2021)

**B.     GEICO Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

22.     Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited.

23.     In fact, auto insurance—a $250 billion industry—stands to secure a windfall from COVID-19. The reason is simple. As one recent report put it, "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[2]

24.     Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the state of Tennessee.

25.     Using cell phone location data, it has been reported that vehicle miles traveled in Tennessee dropped significantly from their January 2020 average in March and April of 2020[3]:

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -25% |
| March 22 - March 28 | -55% |
| March 29 - April 4 | -58% |
| April 5 - April 11 | -60% |
| April 12 - April 18 | -58% |
| April 19 - April 25 | -54% |

26.     Upon information and belief, decreases in pre-COVID miles traveled continued in

---

[2] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), Update-Report-5-7-20.pdf. (Last visited on June 1, 2021)

[3] *See id.* at 6-8.

May, June, and July 2020.[4]

27.     The decreased travel caused a decrease in automobile accidents. A recent submission to Ohio regulators estimated a decline in claims frequency between 25% and 50%.[5]

28.     As a result of this dramatic decrease in driving and auto accidents, the rates set—and thus the premiums charged—by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive.

29.     Auto insurance rates, including those set by GEICO, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data.

30.     Thus, as explained in the recent joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now- overstated expectation about insurance claims.[6]

31.     The excessive premiums collected by GEICO during the COVID-19 pandemic have led to a substantial windfall in profits. It has been reported that for the first quarter of 2020 alone, GEICO generated a pretax underwriting gain of $984 million.[7] This was an increase of

---

[4] *See id.* at 2.

[5] *Geico's claim frequency falling even faster than Q1 data shows*, S&P Global (May 4, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-claims-frequency-falling-even-faster-than-q1-data-shows-58431662.

[6] CEJ/CFA Report, *supra*, at 4.

[7] *Geico's claim frequency falling even faster than Q1 data shows*, S&P Global (May 4, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-

27.8% from result for the same period in 2019.

C. **GEICO Has Failed to Refund Excessive Premiums to Plaintiff and Other Policyholders in Tennessee**

32. According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[8]

33. At all relevant times, GEICO has been aware of the excessive premiums that it has charged to and collected from policyholders in Tennessee as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits. Despite this, GEICO has failed to adequately return these profits to its customers.

34. In spring 2020, GEICO announced the "GEICO Giveback." Under the program, GEICO gave customers a 15% credit on their personal auto insurance premiums, but only if they were new customers, or existing customers who renewed their policy during the applicable time period. Specifically, the credit was given for six-month policies renewed or newly purchased between April 8, 2020, and October 8, 2020, and twelve-month policies renewed or newly purchased between April 8, 2020, and October 7, 2021.

35. GEICO's credit program is inadequate to compensate for the excessive premiums that its customers have paid as a result of COVID-19. For existing customers who renew their policies, the credit does not apply at all to excessive premiums that the customer paid on their

---

claims-frequency-falling-even-faster-than-q1-data-shows-58431662 (last visited on June 1, 2021).

[8] CEJ/CFA Report, *supra*, at 12-13.

previous policies.

36. And even with respect to new and renewal policies, the 15% credit is nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund of premiums.

37. With full knowledge that its refund program was inadequate, GEICO has falsely claimed to its customers that it is in fact providing substantial and full relief. For example, on its website, GEICO falsely claims that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."[9]

38. GEICO does not disclose that its program does not, in fact, fully pass the company's saving on to its customers, and GEICO does not disclose the amount of its excessive profits.

39. Not surprisingly, GEICO's credit program has been met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade.[10] The CEJ/CFA report explains that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and is "wrongly attempting to take credit for future – and in most cases distant future – rate reductions as if it were actually providing relief today to current policyholders."[11]

**D.     Plaintiff's Facts**

---

[9] FAQs About The Geico Giveback, https://www.geico.com/about/coronavirus/giveback/ (last visited May 27, 2021).

[10] *Report Card to Date on the $6.5 Billion+ Promised To Auto Insurance Customers as People Drive Less Due To COVID-19*, Consumer Federation of America (April 4, 2020), https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto- insurance-customers-as-people-drive-less-due-to-covid-19/.

[11] CEJ/CFA Report, *supra*, at 16.

40. In late 2019, Plaintiff purchased an auto insurance policy for one vehicle from GEICO for the period beginning on September 2, 2020, and ending on March 2, 2021.

41. The six-month premium was $583.80. Plaintiff paid the premium in monthly installments.

42. Plaintiff renewed the policy for the period beginning on March 2, 2021, and ending on September 2, 2021. The six-month premium was $584.50.

43. The policy was in effect during the time period during which most of the United States, including Tennessee, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic.

44. Despite the drastic decrease in travel and automobile accidents during 2020, Plaintiff's renewal premium did not reflect the 15% "Giveback" that GEICO promised.

45. Upon information and belief, thousands of other policyholders in Tennessee have been injured by GEICO's policy and practice of charging and failing to refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

46. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

47. The proposed class is defined as follows:

> All Tennessee residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020, to the present.

48. The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the

class members can be determined from GEICO's records.

49. There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

50. The common questions of law and fact include, but are not limited to:

a. Whether GEICO has a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

b. Whether GEICO's insurance rates and premiums were excessive;

c. Whether GEICO breached its contracts with Plaintiff and Class Members;

d. Whether GEICO breached the duty of good faith and fair dealing; and

e. Whether GEICO was unjustly enriched as a result of its charging and failure to fully refund excessive auto insurance premiums.

51. The questions of law and fact listed above will yield common answers for Plaintiff and Class Members as to whether GEICO is liable for the alleged legal violations.

52. Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

53. Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

54. Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because GEICO has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

55. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs

often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to GEICO's policies and practices. There will be no difficulties in managing this action.

56. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract

57. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

58. The policies Plaintiff and Class Members purchased from GEICO constitute contracts.

59. GEICO breached the contracts by failing to refund premiums that were excessive and by charging excessive premiums.

60. GEICO's breach caused Plaintiff and Class Members to suffer damages in the form of excessive premiums.

61. GEICO's breach of contract entitles Plaintiff and Class Members to an award of compensatory damages in an amount to be determined at trial.

62. GEICO's conduct constitutes a willful or wanton disregard for Plaintiff's and Class Members' rights entitling them to an award of punitive damages, attorney's fees, and costs.

### COUNT II
### Breach of the Duty of Good Faith and Fair Dealing

63. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

64. The insurance policies described in this Complaint constitute enforceable contracts under applicable state law.

65. There is implied in every contract a duty of good faith and fair dealing in its performance and enforcement.

66. The specific requirements of this duty depend upon the contract, with courts imposing a construction that is fair and reasonable under the circumstances.

67. At a minimum, this duty requires GEICO to perform under the insurance contracts with Plaintiff and Class Members in a manner consistent with state and federal law and to protect the interests of Plaintiff and Class Members in having the promises required by the agreements and applicable law performed and by ensuring companies do not engage in unfair dealing.

68. GEICO breached this duty of good faith and fair dealing owed to Plaintiff and Class Members, and in undertaking such actions frustrated or denied them the benefits of their original bargain.

69. GEICO also breached this duty of good faith and fair dealing owed to Plaintiff and Class Members by charging premiums not reflective of the risks GEICO faced.

70. As a proximate result of the conscious and objectively unreasonable conduct of GEICO, which conduct was either intended, designed to or did frustrate the rights of Plaintiff and Class Members arising out of such agreements and their reasonably justified expectations based upon the requirements of the law, Plaintiff and Class Members have suffered and/or will continue to suffer in the future damages plus interest, and other economic and consequential damages, in an amount to be proven at trial. As a further proximate result of the conduct of GEICO, Plaintiff was compelled to retain legal counsel and to institute litigation to obtain the

benefits of these agreements and covenants for the benefit of himself and all other Class Members.

71. GEICO's conduct entitles Plaintiff and Class Members to an award of compensatory damages in an amount to be determined at trial.

72. GEICO's conduct constitutes a willful or wanton disregard for Plaintiff's and Class Members' rights entitling them to an award of punitive damages, attorney's fees, and costs.

## COUNT III
## Unjust Enrichment

73. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

74. In the alternative, GEICO has been unjustly enriched.

75. GEICO is in possession of Plaintiff's and Class Members' monies, in the form of excess premiums, which GEICO should not in good conscience and justice be allowed to retain.

76. GEICO's retention of said monies has unjustly benefited GEICO to the detriment of Plaintiff and Class Members.

77. GEICO's conduct entitles Plaintiff and Class Members to an award of compensatory damages in an amount to be determined at trial.

78. GEICO's conduct constitutes a willful or wanton disregard for Plaintiff's and Class Members' rights entitling them to an award of punitive damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the members of the putative class, prays for relief as follows:

   a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

   b. The appointment of Plaintiff as class representative and his counsel as class counsel;

    c.    A declaration that the practices complained of herein are unlawful and violate the laws of Tennessee alleged herein;

    d.    An injunction against Defendants from engaging in the unlawful practices complained of herein;

    e.    Awarding Plaintiff and Class Members their damages in an amount to be determined at trial, including compensatory damages, punitive damages, and any other damages available;

    f.    Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment;

    g.    An order awarding Plaintiff and the class attorneys' fees and costs;

    h.    An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

    i.    Such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

79.    Plaintiff demands a trial by jury on all issues so triable.

Dated this the 2nd of July 2021.

                                      PLAINTIFF MARK PULIDO,

                                      By: */s/ J. Luke Sanderson*
                                      J. Luke Sanderson
                                      B.P.R. 35712
                                      Wampler, Carroll, Wilson & Sanderson, P.C.
                                      208 Adams Ave.
                                      Memphis, TN 38103
                                      Telephone: 901-523-1844
                                      Fax: 901-523-1857

                                      *Counsel for Plaintiff*

DEFENDANTS TO BE SERVED:

GEICO Casualty Company
GEICO Indemnity Company
GEICO General Insurance Company

C T Corporation System
300 Montvue Road
Knoxville, TN 37919